UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK AND SUZANNE CLARK,<br><br>Appellants,<br><br>v.<br><br>S&J ADVERTISING, INC.; and GEOFFREY RICHARDS,<br><br>Appellees. | No. 2:15-cv-02021-TLN<br><br>**ORDER** |

This matter is before the Court on appeal from various decisions and orders issued by the United States Bankruptcy Court for the Eastern District of California regarding the case captioned as *In re Clark*, bankruptcy petition No. 14-21394. Patrick David Clark and Suzanne Clark (collectively, "Appellants") filed their operative brief on February 10, 2017.[1] (ECF No. 41.) Appellants' brief raises six separate grounds for appeal. (ECF No. 41 at 3–4.) S&J Advertising, Inc. (individually, "the Corporation") and Geoffrey Richards, the Chapter 7 Trustee (collectively, "Appellees"), filed an opposition brief on May 12, 2017. (ECF No. 45.) Appellants filed a reply brief on May 26, 2017. (ECF No. 47.)

///

---

[1] For purposes of this Order, references to the docket for the instant appeal (captioned as case number 2:15-cv-02021-TLN) will be to "ECF No." All references to the docket for the underlying bankruptcy proceeding (captioned as petition number 14-21394) will be to "Bankr. ECF No."

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The background to this appeal is lengthy, complex, and occasionally characterized by sharp litigation tactics. Accordingly, the Court will summarize only those aspects of the background that are critical to the instant appeal.

Appellants filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of California on February 14, 2014. (Bankr. ECF No. 1.) One of the assets listed on Appellants' Schedule B in their petition was Ms. Clark's fifty-percent interest in the Corporation (hereinafter, "Ms. Clark's shares"), which Appellants valued as being worth $42,250. (Bankr. ECF No. 1 at 14.)

In June 2014, Ms. Clark filed a certificate of election to wind up and dissolve the Corporation with the California Secretary of State pursuant to California Corporations Code § 1900, which she had the authority to do as the owner of half the Corporation's shares. (Bankr. ECF No. 60 at 3); *see* Cal. Corp. Code §§ 1900, 1901. Ms. Clark's election was irrevocable under California Corporations Code § 1902. *See* Cal. Corp. Code § 1902.

In August 2014, the Corporation filed a petition to stay dissolution proceedings and ascertain value of Ms. Clark's shares pursuant to California Corporations Code § 2000 ("§ 2000") in the Superior Court for the County of Solano. (Bankr. ECF No. 60 at 4–14.) In December 2014, the state court granted the Corporation's petition and stayed the dissolution until appraisers could arrive at a fair valuation of Ms. Clark's shares, at which point the Corporation could purchase those shares rather than dissolve. (Bankr. ECF No. 60 at 15–16.)

In January 2015, the Corporation moved the bankruptcy court for relief from the automatic stay imposed by 11 U.S.C. § 362(a) so the process of valuing Ms. Clark's shares could proceed in state court. (Bankr. ECF No. 58.) On March 4, 2015, the bankruptcy court allowed the appraisal process to continue but ordered, "All further proceedings relating to the § 2000 process to value and purchase the debtor's shareholder interest shall be brought before this court." (Bankr. ECF No. 70 at 1–2.)

On March 10, 2015, Appellants filed a third modified Chapter 13 plan, which included a provision requiring Appellants to contribute no less than $160,000 from the sale of Ms. Clark's

shares to fund the plan. (Bankr. ECF No. 71 at 3.) The bankruptcy court confirmed the third modified plan on May 18, 2015. (Bankr. ECF No. 104.)

In June 2015, appraisers selected by both parties issued a detailed report pursuant to § 2000, valuing Ms. Clark's shares at $247,000. (Bankr. ECF No. 108.) That same month, the Corporation moved the bankruptcy court to approve the valuation and transfer of Ms. Clark's shares. (Bankr. ECF No. 105–108.) The bankruptcy court held hearings on September 9 and 11, 2015, at which it made oral findings granting in part and denying in part the Corporation's motion. (ECF No. 6 at 3.) In relevant part, the bankruptcy court concluded 11 U.S.C. § 363 governed the sale of Ms. Clark's shares, not § 2000. (Bankr. ECF No. 41-1 at 13.) The Corporation filed a motion to clarify the ruling shortly thereafter. (Bankr. ECF No. 144.) On September 24, 2015, Appellants appealed the September 2015 ruling. (ECF No. 1.)

On October 20, 2015, the bankruptcy court issued a written memorandum prompted by the Corporation's clarification motion. (Bankr. ECF No. 176.) In its memorandum, the bankruptcy court amended its September 2015 ruling insofar as to hold that § 2000, not 11 U.S.C. § 363, governed the valuation and sale of Ms. Clark's shares. (Bankr. ECF No. 176 at 10.) Accordingly, the bankruptcy court granted the Corporation's motion to approve the valuation and transfer of stock and scheduled an evidentiary hearing to approve the joint appraisal. (Bankr. ECF No. 176 at 12–14.) On October 23, 2015, Appellants filed a second appeal, this time challenging the bankruptcy court's amended ruling.[2] (ECF No. 12.)

Also, on October 20, 2015, the bankruptcy court also authorized Federal Rule of Bankruptcy Procedure 2004 examinations ("Rule 2004 examinations") sought by the Corporation. (Bankr. ECF No. 177.) The bankruptcy court issued subpoenas for Appellants to produce documents by December 2, 2015, and to appear for the Rule 2004 examinations on December 4, 2015. (Bankr. ECF No. 195 at 4–15.) Appellants moved to quash the subpoenas on November 3,

---

[2] On November 11, 2015, Appellants requested the bankruptcy court stay its September 9, 2015, September 11, 2015, and October 20, 2015, valuation-related orders pending Appellants' appeal of those orders. (Bankr. ECF No. 200.) The bankruptcy court denied Appellants' motion for a stay pending appeal, stating that the Appellants could refile their stay request pending this Court's determination as to whether to grant the appeal. (Bankr. ECF No. 229.) However, the bankruptcy court vacated the evidentiary hearing regarding the joint appraisal. (Bankr. ECF No. 209 at 4.) The Court notes that the parties did not seek any other stays of the bankruptcy court's then-existing or subsequent orders.

2015. (Bankr. ECF No. 193.) The bankruptcy court denied Appellants' motion to quash on December 2, 2015, and the parties later stipulated to extend the dates for document production and examinations. (Bankr. ECF No. 225; Bankr. ECF No. 247 at 3.) On December 14, 2015, before the new deadlines, Appellants moved to amend the bankruptcy court's order and informed the Corporation's attorney that they intended to ignore the bankruptcy court's order because they believed the order was subject to clarification in the event of a dispute. (Bankr. ECF No. 247 at 3–4.) Appellants did not produce documents by the extended deadline, nor did they appear for the rescheduled Rule 2004 examinations. (ECF No. 41-1 at 27–28.)

On December 23, 2015, the Corporation filed a motion to convert the bankruptcy from Chapter 13 to Chapter 7. (Bankr. ECF No. 244.) The bankruptcy court granted the motion to convert on February 3, 2016. (Bankr. ECF No. 277.) The bankruptcy court explained that the case was converted, among other reasons, due to Appellants' intentional disobedience of the court's order to attend the Rule 2004 examinations and deceitful conduct toward the court and creditors for misrepresenting the value of their shares. (ECF No. 283 at 15.) The bankruptcy court appointed a Chapter 7 Trustee that same day. (ECF No. 277.)

On February 5, 2016, Appellants filed a third appeal, which challenged the bankruptcy court's conversion order. (ECF No. 13 at 1.) The Court consolidated all three appeals. (ECF No. 11.) The Court then granted Appellees' motion to dismiss Appellants' first and second appeals, holding that the valuation-related orders were unappealable interlocutory orders. (ECF No. 20 at 7.) However, the Court found that the subject of the third appeal, the conversion order, was a final judgment and therefore appealable. (ECF No. 20 at 8.)

On August 16, 2016, after this Court dismissed the two valuation-related appeals, the Corporation moved the bankruptcy court to reschedule the evidentiary hearing regarding the joint appraisal. (Bankr. ECF No. 375.) The bankruptcy court granted the Corporation's motion. (Bankr. ECF No. 379.) On September 27, 2016, the bankruptcy court announced its tentative decision that § 2000 continued to govern the dissolution valuation after conversion of the case to Chapter 7. (ECF No. 41-1 at 72.) The evidentiary hearing took place on November 7, 2016. (Bankr. ECF No. 408.) That same day, the bankruptcy court granted a motion to compromise

4

between the Chapter 7 Trustee and the Corporation and granted the approval of valuation and transfer of Ms. Clark's shares to the Corporation for $247,000. (Bankr. ECF No. 412; Bankr. ECF No. 424.)

On November 21, 2016, Appellants filed a fourth appeal regarding the bankruptcy court's orders approving of the compromise and ordering the sale of Ms. Clark's shares. (ECF No. 38.) The Court consolidated the fourth appeal with the remaining appeal of the bankruptcy court's conversion order. (ECF No. 39.) The Court then requested that the parties submit updated briefing to incorporate the issues raised by the fourth appeal. (ECF No. 40.) The Court will thus consider only the arguments raised in Appellants' brief (ECF No. 41), Appellees' brief (ECF No. 45), and Appellants' reply (ECF No. 47), respectively.

## II. STANDARD OF REVIEW

The Court reviews the bankruptcy court's factual findings for clear error, *In re Southern Cal. Plastics, Inc.*, 165 F.3d 1243, 1245 (9th Cir. 1999), its conclusions of law de novo, *id.*, and its evidentiary rulings for an abuse of discretion, *In re Slatkin*, 525 F.3d 805, 811 (9th Cir. 2008). "To reverse on the basis of an erroneous evidentiary ruling, [the Court] must conclude not only that the bankruptcy court abused its discretion, but also that the error was prejudicial." *Slatkin*, 525 F.3d at 811.

## III. ANALYSIS

Appellants raise the following six grounds for appeal: (1) the bankruptcy court lacked subject matter jurisdiction over the § 2000 proceeding pending in state court; (2) the bankruptcy court erred when it compelled Appellants to sell their shares; (3) the bankruptcy court erred when it judicially estopped Appellants from challenging the value of their shares; (4) the bankruptcy court abused its discretion when it granted the Corporation's request to undertake Rule 2004 examinations of Appellants, denied Appellants' motion to quash their subpoenas for the Rule 2004 examinations, and denied Appellants' motion to amend the denial of their motion to quash; (5) the bankruptcy court erred when it failed to determine whether the sale of the shares complied with California Corporations Code § 500; and (6) the bankruptcy court erred when it granted Corporation's motion to involuntarily convert Appellants' Chapter 13 bankruptcy to Chapter 7.

Appellants request that this Court vacate each of the bankruptcy court's orders relating to § 2000, the Rule 2004 examinations, motion to quash, conversion order, the sale order, and "all orders necessary to further this court's decision regarding the matters argued herein." (ECF No. 41 at 76.) Appellants also request that this Court enter new orders granting the motion to quash, granting Appellants' request for Rule 2004 examination, granting discovery in the § 2000 proceeding, and denying the conversion order. (ECF No. 41 at 76–77.)

It appears Appellants essentially aim to undo a chain of decisions by the bankruptcy court that led to the sale of Ms. Clark's shares. At the outset, the Court notes its concern about whether it can equitably grant Appellants' requested relief. Appellants never sought to stay the bankruptcy court orders at issue, and the sale of Ms. Clark's shares has long passed as a result. Based on this concern, the Court ordered the parties to file supplemental briefs as to the doctrine of equitable mootness. *See In re Transwest Resort Properties, Inc.*, 801 F.3d 1161 (9th Cir. 2015)*; see also In re City of Stockton*, 542 B.R. 261, 273 (B.A.P. 9th Cir. 2015) ("[E]quitable mootness raises jurisdictional questions that [courts] have an independent duty to consider sua sponte.").

In *Transwest*, the Ninth Circuit described the doctrine of equitable mootness as it relates to bankruptcy cases:

> Equitable mootness is a prudential doctrine by which a court elects not to reach the merits of a bankruptcy appeal. An appeal is equitably moot if the case presents transactions that are so complex or difficult to unwind that debtors, creditors, and third parties are entitled to rely on the final bankruptcy court order. Unlike Article III mootness, which causes federal courts to lack jurisdiction and so to have an inability to provide relief, equitable mootness is a judge-created doctrine that reflects an unwillingness to provide relief.

801 F.3d at 1167 (internal citations omitted). The *Transwest* court then outlined four considerations to determine whether a bankruptcy appeal is equitably moot: (1) whether a stay was sought; (2) if a stay was sought and not gained, a court will look to whether substantial consummation of the plan has occurred; (3) the effect a remedy may have on third parties not before the court; and (4) whether the bankruptcy court can fashion effective and equitable relief without creating an uncontrollable situation for the bankruptcy court. *Id.* at 1167–1168.

Applying the *Transwest* factors, it is undisputed that Appellants failed to seek a stay of the orders pending appeal, which suggests Appellants have not fully pursued their rights. *See id.* at 1167. Further, the Court is concerned about the impact vacating the sale might have on third parties. The Corporation has continued to operate since the sale three years ago, and the sole owner has made extensive investments and improvements to the business during that time. (ECF No. 54 at 5; ECF No. 54-1.) It is also unclear whether the bankruptcy court can fashion equitable relief. The bankruptcy court effectively gave Appellants what they asked for: Ms. Clark made an irrevocable election in state court to dissolve the Corporation while her bankruptcy case was pending, and the bankruptcy court ultimately sold the shares pursuant to state law based on the valuation Ms. Clark's jointly-selected appraisers provided. Moreover, the shares were sold for $274,000, which was far beyond the $42,250 valuation Appellants repeatedly represented to the bankruptcy court. Put simply, Appellants now seek to vacate the sale, even though Ms. Clark set the sale in motion and reaped a better-than-expected result. Appellants' inconsistency, or at the very least lack of clarity, permeates their entire appeal. For all these reasons, the Court fears that Appellants' fickle search for relief may create an uncontrollable situation in the bankruptcy court.

Given the complexity of this case and risk of prejudice to third parties if the sale of Ms. Clark's shares is undone, the Court concludes there is an argument to be made that this appeal should be dismissed on equitable mootness grounds. However, because the Court also concludes that the appeal cannot succeed on its merits, the Court will address each of Appellants' six grounds for appeal in turn.[3]

### A. Subject Matter Jurisdiction

Appellants argue the bankruptcy court lacked subject matter jurisdiction over the § 2000 proceedings for two reasons: (1) the bankruptcy court violated the *Rooker–Feldman* doctrine; and (2) Appellees never formally removed the § 2000 proceeding to bankruptcy court. (ECF No. 41

---

[3] Appellees argue Appellants ignored 22 of the 28 issues they included in their appeal. (ECF No. 45 at 20.) Appellees contend those issues should be treated as abandoned and therefore dismissed. (ECF No. 45 at 20.) Appellants did not respond to Appellees' argument in their reply brief. The Court notes there is some overlap between the issues on appeal delineated in Appellants' "statement of issues on appeal" (ECF No. 15) and the six grounds for appeal articulated in their operative brief (ECF No. 41.) To the extent Appellants failed to address an issue on appeal in their operative brief, the Court finds that Appellants waived future appeal of those issues.

7

at 34.) The Court will discuss Appellants' jurisdictional arguments separately.

### i. Rooker–Feldman Doctrine

Appellants argue the bankruptcy court violated the *Rooker–Feldman* doctrine by lifting the automatic stay triggered by 11 U.S.C. § 362(a) after the state court had already determined it could proceed with the § 2000 action regardless of the automatic stay. (ECF No. 41 at 36.) In opposition, Appellees assert the *Rooker–Feldman* doctrine only applies in those limited instances where a party seeks to directly overturn a state court's judgment, which did not occur in this case. (ECF No. 45 at 21–22.)

The *Rooker–Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." *Id.* at 292.

Appellants' reliance on the *Rooker–Feldman* doctrine is unavailing. According to Appellants' logic, because the state court had already determined the § 2000 proceeding was not subject to the automatic stay triggered by Appellants' bankruptcy, the bankruptcy court impermissibly reviewed a final state court decision when it similarly allowed the appraisal process to continue. (ECF No. 41 at 32–33.) However, the bankruptcy court did not act as an appellate court reviewing a final state court decision. The bankruptcy court independently lifted the automatic stay. Further, it cannot be said that the bankruptcy court "rejected" the state court's decision because the bankruptcy court effectively affirmed the state court's decision to let the § 2000 valuation proceed. For these reasons, the *Rooker–Feldman* doctrine does not apply to the instant case.

### ii. Removal

Appellants next argue that the bankruptcy court could not exercise subject matter jurisdiction over the § 2000 proceeding absent removal from state court pursuant to 28 U.S.C. §

8

1452(a), which sets forth a formal removal process that was not followed in this case. (ECF No. 41 at 39.) Appellees do not respond to Appellants' removal argument.

After a review of the complex procedural history of this case, the Court concludes that the bankruptcy court did not take jurisdiction of the § 2000 proceedings such that removal was necessary. The bankruptcy court initially lifted the automatic stay imposed by 11 U.S.C. § 362(a) to allow the § 2000 process that had begun in state court to continue despite Appellants' bankruptcy. (Bankr. ECF No. 70 at 1–2.) The parties' jointly-selected appraisers continued their work and eventually arrived at a valuation of $247,000. (Bankr. ECF No. 108.) Upon the Corporation's subsequent valuation and transfer motion, the bankruptcy court chose to honor the § 2000 valuation and sell the shares accordingly, as was authorized by the Chapter 13 plan.[4] (Bankr. ECF No. 176 at 12.) After converting the case to Chapter 7, the bankruptcy court again determined § 2000, as substantive state law, should govern the sale of Ms. Clark's shares.[5] (ECF 41-1 at 74.)

The Court concludes that removal was unnecessary because the bankruptcy court did not take jurisdiction of the § 2000 proceeding. Rather, the bankruptcy court chose to apply § 2000 to the sale and honor the valuation that originated in state court because § 2000 is state substantive law. Further, the bankruptcy court had jurisdiction over Ms. Clark's shares pursuant to 28 U.S.C. § 1334(e) because those shares constituted property of the estate. This Court therefore holds the bankruptcy court properly exercised subject matter jurisdiction over Ms. Clark's shares.

///

///

---

[4] The bankruptcy court resolved the valuation and transfer motion pursuant to 11 U.S.C. § 1327(a), which states, "the provisions of a confirmed [chapter 13] plan bind the debtor[.]" (Bankr. ECF No. 176 at 11.) The bankruptcy court pointed out that Appellants knew well before the third modified plan was confirmed that the sale of Ms. Clark's shares would fund the plan, and Appellants also knew the § 2000 valuation was to continue. (Bankr. ECF No. 176 at 11.) The bankruptcy court concluded, "the res judicata effect of the order confirming the third modified plan now precludes those challenges under § 1327(a)." (Bankr. ECF No. 176 at 12.) The bankruptcy court then stated it would enforce and implement the third modified plan by holding an evidentiary hearing to hear live testimony from the parties' joint appraisers at which point it would confirm or adjust the fair value of Ms. Clark's shares. (Bankr. ECF No. 176 at 13.)

[5] The bankruptcy court found that § 2000 process remained applicable in the bankruptcy case because the § 2000 buy-out process is a matter of substantive California law. (ECF 41-1 at 70–74.) The bankruptcy court cited *Raleigh v. Illinois*, 530 U.S. 15, 20 (2000), to support the contention that substantive state law continues to apply in a bankruptcy case just as it would outside bankruptcy. (ECF 41-1 at 72.)

B. <u>Sale of Shares Pursuant to § 2000</u>

Appellants next argue that 11 U.S.C. § 363 ("§ 363"), which is federal bankruptcy law, preempts California's § 2000. (ECF No. 41 at 40–41.) More specifically, Appellants argue § 2000 authorizes a non-debtor and non-trustee to move a court for sale, while § 363 does not authorize such a sale nor does it allow the court to compel a Chapter 13 debtor to sell estate property. (ECF No. 41 at 41.) In opposition, Appellees contend the bankruptcy court correctly allowed the Chapter 7 Trustee to complete the dissolution process initiated by Ms. Clark. (ECF No. 45 at 24.)

Appellants' argument is unpersuasive. Appellants cite *Butner v. United States*, 440 U.S. 48 (1979), to assert "any state law that is inconsistent with the bankruptcy code is preempted." (ECF No. 41 at 40.) Yet Appellants overstate the holding in *Butner*. At issue in *Butner* was whether to apply state law or federal rules of equity when deciding if a security interest in property extended to rents and profits derived from that property. *Id.* at 54–55. The *Butner* Court held that in the absence of a federal statute "defining a mortgagee's interest in the rents and profits earned by property in a bankrupt estate, . . . Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Id.* at 54. The Court also stated, "Property interests are created and defined by state law . . . there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* at 55. In other words, *Butner* stands for the proposition that bankruptcy courts can properly define property interests according to state law "[u]nless some federal interest requires a different result." *Id.*

Here, Appellants fail to provide the Court with any authority to suggest a federal interest required the bankruptcy court to apply § 363 rather than § 2000. Section 363 does not discuss the valuation and sale of corporate shares specifically, while § 2000 is directly on point. Moreover, Appellants argue the Court cannot compel the sale because Appellants are "Chapter 13 debtors," but Appellants ignore the fact that the bankruptcy court ordered the sale of the shares after converting the case to Chapter 7. Indeed, the bankruptcy court sold Ms. Clark's shares pursuant to the Corporation's valuation and transfer motion, which the Chapter 7 Trustee supported in his

10

motion to approve the compromise. (Bankr. ECF No. 412.) Absent contrary authority and for the foregoing reasons, the Court holds § 363 does not preempt § 2000 under the facts of this case.

### C. Judicial Estoppel

Appellants argue the bankruptcy court erred by holding that Appellants were judicially estopped from challenging the $247,000 valuation of Ms. Clark's shares as too low. (ECF No. 41-1 at 14.) We review the bankruptcy court's application of judicial estoppel for an abuse of discretion. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).

The *Hamilton* court laid out factors that inform the decision whether to apply judicial estoppel. *Id.* at 782–83. First, a party's later position must be "clearly inconsistent" with its earlier position. *Id.* Second, courts inquire whether the party succeeded in persuading a court to accept that party's earlier position. *Id.* Third, courts look to whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* The *Hamilton* court also noted that these enumerated factors were not exhaustive, and "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *Id.* (citations omitted).

In *Hamilton*, for example, the court applied judicial estoppel when the plaintiff knowingly failed to list claims against State Farm as assets on his bankruptcy schedules, and then later sued State Farm on the same claims. *Id.* at 784. The court stated,

> [W]e must invoke judicial estoppel to protect the integrity of the bankruptcy process. The debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets. The Bankruptcy Code and Rules 'impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims.' The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding. Hamilton's failure to list his claims against State Farm as assets on his bankruptcy schedules deceived the bankruptcy court and Hamilton's creditors, who relied on the schedules to determine what action, if any, they would take in the matter. [Hamilton's] failure to disclose assets on his bankruptcy schedules . . . provides the most compelling reason to bar him from prosecuting claims against State Farm.

*Id.* at 785 (internal citations omitted).

Here, Appellants argue the bankruptcy court erred for three reasons: (1) judicial estoppel

11

is improper for a 100-percent plan such as the third modified plan; (2) judicial estoppel is improper in a Chapter 13 case; and (3) Appellants did not misrepresent the value of Ms. Clark's shares because the value of those shares changed upon the Corporation's § 2000 petition. (ECF No. 41 at 42–45.) The Court will address Appellants' arguments in turn.

### *i.* *100-percent plan*

Appellants argue judicial estoppel is improper because creditors were to be reimbursed in full under Appellants' third modified plan. (ECF No. 41 at 42.) To support their contention, Appellants cite *Donato v. Metropolitan Life Ins. Co.*, 230 B.R. 418 (N.D. Cal. 1999).

In *Donato*, a Chapter 13 debtor failed to disclose a lawsuit against her former employer as an asset of her bankruptcy estate, used different names in the district court case and in the bankruptcy case, and incorrectly listed her former employer as her current employer. *Id.* at 422. The court noted that although the debtor's lawsuit should have been disclosed, there was no evidence that the bankruptcy court, bankruptcy trustee, or creditors relied on the debtor's incorrect statements or omissions. *Id.* at 423. The court held that the debtor was not judicially estopped from pursuing her lawsuit against her former employer in district court because the confirmed plan provided for full repayment of all creditors' claims, and the debtor filed a declaration stating her failure to disclose was the result of inadvertence, not intentional wrongdoing. *Id.* at 422–423.

As a preliminary matter, *Donato* was a district court decision unrelated to the debtor's bankruptcy, not a district court review of a bankruptcy court decision. This Court, unlike the *Donato* court, reviews the bankruptcy court's decision for an abuse of discretion rather than make its own factual determinations. *Hamilton*, 270 F.3d at 782. Further, while the full repayment of creditors was one factor the *Donato* court considered, it also emphasized the debtor's errors were not a result of intentional wrongdoing. *Donato*, 230 B.R. at 422.

Here, unlike *Donato*, the bankruptcy court judicially estopped Appellants from challenging the value of Ms. Clark's shares because it found that Appellants were intentionally deceptive. Appellants listed the value of Ms. Clark's shares at $42,250 in their initial petition and again when they proposed a second amended plan that paid their unsecured creditors a ten percent

dividend, which the bankruptcy court confirmed on October 16, 2014. (Bankr. ECF No. 1 at 14; Bankr. ECF Nos. 47, 53.) The Corporation was appraised at $811,000 in March 2014, yet Appellants filed an amended Schedule B form on September 2, 2014, which once again valued Ms. Clark's shares at $42,250. (Bankr. ECF No. 49.) Appellants later claimed the $247,000 valuation was too low. (ECF No. 41-1 at 15.) According to the bankruptcy court, "the debtor intentionally undervalued her interest to obtain a plan that provided for de minimis payments to her creditors, and then when it [was] advantageous to the debtor, claim[ed] that the shares [were] worth much more." (ECF No. 41-1 at 15.)

The facts of this case support invoking judicial estoppel based on the *Hamilton* factors. First, Appellants' assertion that the $247,000 valuation was too low is clearly inconsistent with their former representations that the shares were worth only $42,250. Second, Appellants succeeded in persuading the bankruptcy court to confirm at least two plans based on the $42,250 valuation. Third, the Appellants' inconsistent positions created an unfair detriment to the extent the bankruptcy court and creditors relied on the lower valuation. Moreover, the factual scenario in the instant case warrants "additional considerations." *Hamilton*, 270 F.3d at 782–783. Regardless of whether Appellants' creditors were to be paid in full under the third modified plan, the bankruptcy court essentially estopped Appellants to "protect the integrity of the bankruptcy process." *Id.* at 785. Indeed, Appellants clearly disregarded their duty to disclose assets throughout the bankruptcy process. *See id.* For these reasons, the Court concludes the bankruptcy court's determination that Appellants were intentionally deceptive is well-supported, and such deception provides grounds to estop Appellants from challenging the value of Ms. Clark's shares.

### ii. Chapter 13

Appellants next argue that judicial estoppel is inappropriate in a Chapter 13 case because a debtor with the powers of a trustee cannot be judicially estopped from pursuing a claim. (ECF No. 41 at 42.) However, Appellants' cited authority is unpersuasive. For example, Appellants cite to *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268 (11th Cir. 2004), but *Parker* discussed a Chapter 7 case, not a Chapter 13. The *Parker* court held that a Chapter 7 trustee who did not

make any inconsistent statements to the court could pursue an asset of a bankruptcy estate even though the debtor failed to list the asset on the bankruptcy schedule. *Id.* at 1269. As such, *Parker* is factually distinct from the instant case and does not support Appellants' contention. Appellants' other cases are similarly unpersuasive.[6] Absent authority to the contrary, Appellants' argument that judicial estoppel is inappropriate in a Chapter 13 case is unavailing.

### iii. Value of Ms. Clark's shares changed

The Court's understanding of Appellants' final judicial estoppel argument is that they did not misrepresent the value of Ms. Clark's corporate shares because the valuation of those shares changed upon the filing of the § 2000 petition. (ECF No. 41 at 45.) Yet even assuming the value of the shares somehow changed once the Corporation filed its § 2000 petition, Appellants fail to explain why they repeatedly valued Ms. Clark's shares at $42,250 even after the petition was filed. The Court thus rejects Appellants' attempt to justify their repeated misrepresentation of the value of Ms. Clark's shares.

In sum, the record clearly supports the bankruptcy court's finding that Appellants intended to deceive the bankruptcy court and creditors by repeatedly undervaluing Ms. Clark's shares. Based on that finding, it was proper for the bankruptcy court to invoke judicial estoppel to "protect the integrity of the bankruptcy process." *Hamilton*, 270 F.3d at 785. Accordingly, the Court holds the bankruptcy court did not abuse its discretion by judicially estopping Appellants from challenging the value of Ms. Clark's shares.

### D. Orders Relating to the Rule 2004 Examinations

Appellants argue the Corporation lacks standing to bring any action other than the § 2000 proceeding. (ECF No. 41 at 46.) Appellants further argue that by seeking Rule 2004 examinations, the Corporation aimed to impermissibly litigate and undertake discovery against Ms. Clark in matters beyond the § 2000 proceeding. (ECF No. 41 at 48.) Appellees respond that the bankruptcy court correctly ruled the Corporation has standing as a "party in interest." (ECF

---

[6] The Court notes that Appellants fail to accurately cite a case they refer to as "*Miller v. Campbell*." Appellants also cite *Linares v. CitiMortgage, Inc.*, No. C-14-3435-EMC, 2015 WL 2088705 (N.D. Cal. May 5, 2015), but *Linares* does not discuss the doctrine of judicial estoppel. Such misleading citations and references are inartful, sloppy, and not well-received by this Court.

No. 45 at 27.)

Under Rule 2004, a party in interest may seek examination of any entity. Fed. R. Bankr. P. 2004(a). Here, the bankruptcy court found the Corporation to be a party in interest because it had a financial interest at stake in Appellants' bankruptcy. (ECF No. 283 at 19.)

Notably, Appellants do not challenge the Corporation's status as a party in interest for the Rule 2004 examinations. Rather, the thrust of Appellants' argument is that California Corporations Code § 800 ("§ 800") requires any action by the Corporation other than the section 2000 proceeding be brought as a derivative suit. (ECF No. 41 at 47–49.) Section 800 outlines the standing requirements for bringing a derivative suit, which is a lawsuit brought by a shareholder on behalf of a corporation against a third party. Cal. Corp. Code § 800. However, as Appellants admit, § 2000 proceedings are distinct from a derivative suit. (ECF No. 41 at 47.) In any event, Appellants fail to coherently explain how § 800 applies to the instant case.

The Court also notes that Appellants cannot reasonably challenge the Rule 2004 examinations because as Appellees point out, the Rule 2004 examinations never occurred. Presumably Appellants' real issue with the Rule 2004 examinations and related orders has to do with the bankruptcy court's decision to convert the case to Chapter 7 based in part on Appellants' failure to appear for the Rule 2004 examinations. If so, Appellants' arguments as to the Rule 2004 examinations would have been better brought solely in the context of the conversion order. As it is, Appellants fail to articulate an intelligible basis for reversing the bankruptcy court's orders related to the Rule 2004 examinations. The Court thus holds the bankruptcy court did not err with respect to those orders.

E. Applicability of California Corporations Code § 500 ("§ 500")

Appellants argue the bankruptcy court failed to establish that the sale of Ms. Clark's shares satisfied § 500. (ECF No. 41 at 52.) In opposition, Appellees contend § 500 does not apply to dissolution proceedings under California Corporations Code § 1900 ("§ 1900"). (ECF No. 45 at 29.)

Section 500 imposes certain restrictions on distributions to shareholders. Cal. Corp. Code § 500. Appellants fail to explain how a fifty-percent shareholder buying the shares of the other

15

fifty-percent shareholder to avoid dissolution constitutes a shareholder distribution that would trigger § 500. Moreover, California Corporations Code § 508 states, "[Section 500] does not apply in connection with any proceeding for winding up and dissolution under Chapter 18 or 19." Cal. Corp. Code § 508. Because the sale was prompted by Ms. Clark's petition to dissolve pursuant to § 1900, the Court holds § 500 does not apply to the instant case.

### F. Conversion Order

Finally, Appellants argue the bankruptcy court erred by converting the case to Chapter 7. (ECF No. 41 at 56.) The bankruptcy court converted the case for two reasons: (1) Appellants' failure to appear for Rule 2004 examinations constituted a material default of the terms of the third modified plan; and (2) Appellants abused the bankruptcy process based on the totality of the circumstances. (Bankr. ECF No. 283 at 9, 15.) As will be discussed, the Court concludes the record supports the bankruptcy court's decision to convert based solely on Appellants' abuse of the bankruptcy process. As such, Court need not and does not reach whether Appellants' failure to appear for Rule 2004 examinations constituted a material default.[7]

A bankruptcy court may convert a Chapter 13 case to Chapter 7 for cause. 11 U.S.C. § 1307(c). In addition to a non-exclusive statutory list of factors, abuse of the bankruptcy process may constitute cause for conversion. *See In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999) (citing *In re Eisen*, 14 F.3d 469, 470 (9th Cir. 1994)). In determining whether cause exists based on bad faith, the bankruptcy court assesses the totality of the circumstances. *In re Eisen*, 14 F.3d at 470. This assessment considers the following four factors: (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) the presence of egregious behavior. *In re Leavitt,* 171 F.3d at 1224.

In this case, the bankruptcy court concluded the first and fourth *Leavitt* factor weighed in favor of conversion. (Bankr. ECF No. 283 at 16.) The bankruptcy court described Appellants'

---

[7] The Court will, however, discuss Rule 2004 examinations insofar as Appellants' failure to appear for those examinations contributed to Appellants' abuse of the bankruptcy process.

16

decision to disobey its order to attend Rule 2004 examinations as "part of a larger and continuing pattern of an abuse of the Chapter 13 process in which debtors have engaged from the inception of this case." (Bankr. ECF No. 283 at 5.) According to the bankruptcy court, Appellants manipulated and knowingly undervalued Ms. Clark's interest in the Corporation "in order to confirm plans with substantially reduced payments to unsecured creditors and, in turn, enhance the retention of non-exempt assets for their own personal benefit." (Bankr. ECF No. 283 at 5.)

When Appellants filed their Chapter 13 petition on February 14, 2014, they filed schedules under penalty of perjury in which they valued Ms. Clark's shares at $42,250. (Bankr. ECF No. 1 at 14.) That same day, Appellants also filed a plan that provided for payment of approximately fifty percent to unsecured creditors. (Bankr. ECF No. 5.) The bankruptcy court notes Appellants did not amend this valuation even after the Corporation provided them with an appraisal of its value at $811,000 as of March 3, 2014. (Bankr. ECF No. 283 at 6.) The bankruptcy court further notes that Appellants did not amend the value of the corporate shares upon Appellants' first modified plan, filed May 14, 2014, which in fact aimed to reduce payments to unsecured creditors to ten percent. (Bankr. ECF No. 28.)

On July 30, 2014, the Corporation offered to buy Ms. Clark's shares for $200,000 with additional payments over time. (Bankr. ECF No. 283 at 7.) Despite this offer and the previously discussed valuation of $811,000, the Appellants filed amended schedules on September 2, 2014, in which they again valued Ms. Clark's shares at $42,250. (Bankr. ECF No. 49.) Appellants also filed a second modified plan which again aimed to reduce payments to unsecured creditors to ten percent. (Bankr. ECF No. 47.) On September 8, 2014, the Appellants received an offer to purchase all Ms. Clark's shares for $1,200,000. (Bankr. ECF No. 283 at 7.) The bankruptcy court asserted Appellants never disclosed these values or offers and instead allowed the bankruptcy court to confirm their ten percent plan on October 16, 2014. (Bankr. ECF No. 283 at 7; Bankr. ECF No. 55.) The bankruptcy court stated that if "debtors accurately valued the co-debtor's fifty-percent corporate interest consistent with information within their possession, the terms of any plan would have required payments to unsecured creditors well in excess of ten and fifty percent." (Bankr. ECF No. 283 at 16.)

It was not until March 10, 2015, after the Corporation notified the court that Ms. Clark's shares would likely be valued over $200,000, that Appellants filed the third modified plan based on the higher valuation. (Bankr. ECF No. 72.) When joint appraisers valued the shares at $247,000 on June 6, 2015, Appellants then claimed the valuation was too low. (Bankr. ECF No. 283 at 8.) In a footnote, the bankruptcy court also mentions the "disconcerting" fact that Appellants are obligated to pay attorney's fees from any surplus distribution from the sale of Ms. Clark's shares. (Bankr. ECF No. 283 at 8.) The bankruptcy court stated Appellants failed to timely disclose this obligation, and such an obligation gave Appellants' counsel a financial stake in the bankruptcy case which could conflict with the best interest of the creditors and estate. (Bankr. ECF No. 283 at 8–9.)

Notably, Appellants do not contest the factual findings summarized above that led to the bankruptcy court's decision to convert, nor do they explain their failure to amend valuation until the third modified plan despite having many opportunities to do so earlier. Instead, Appellants make incomplete, haphazard, and random arguments. For example, Appellants argue the Corporation lacked standing to bring a motion to convert, but Appellants do not develop their argument beyond that conclusory assertion. (ECF No. 41 at 66.) Appellants also argue in length about how Judy Mena, the owner of the other fifty-percent interest in the Corporation, breached various fiduciary duties. (ECF No. 41 at 66–71.) Yet Appellants fail to explain how such a breach is relevant to the bankruptcy court's decision to convert the case. Finally, Appellants argue the conversion order was an impermissible terminating sanction for Appellants' failure to provide discovery through the Rule 2004 examinations. (ECF No. 41 at 71–76.) In considering Appellants' final argument, the Court simply notes that the bankruptcy court articulated sufficient grounds to convert beyond any purported discovery concerns, namely, Appellants' ongoing, intentional deception.

In sum, the record clearly supports the bankruptcy court's finding that Appellants misrepresented facts to the bankruptcy court and intentionally undervalued Ms. Clark's shares. Further, the bankruptcy court did not err in deciding that such a pattern of abuse, which culminated in Appellants' failure to appear for Rule 2004 examinations, was egregious.

Accordingly, the Court holds the bankruptcy court did not abuse its discretion in converting the case to Chapter 7 on the basis of Appellants' abuse of the bankruptcy process. *See Leavitt*, 171 F.3d at 1223 ("[An] appellate court may affirm the lower court on any ground fairly supported by the record.").

**IV.　CONCLUSION**

For the foregoing reasons, the Court hereby AFFIRMS the judgments of the bankruptcy court as to all Appellants' issues on appeal.

IT IS SO ORDERED.

Dated: November 13, 2019

Troy L. Nunley
United States District Judge